CARLOS HUGO IRIZARRY, Plaintiff and Appellant, *v.* PUERTO RICO WATER RESOURCES AUTHORITY, Defendant and Appellee.

No. R-62-135.     Decided March 29, 1966.

*Fiddler, González & Rodríguez, María Luisa Fuster,* and *Federico Tilén* for appellant. *José Antonio Arabía* and *Carlos M. Díaz Lamoutte* for appellee.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

At the conclusion of the evidence presented by plaintiff-petitioner, Carlos Hugo Irizarry, in an action to recover for the damages suffered as a result of the electrocution of certain bovine cattle, the defendant Water Resources Authority moved for the dismissal of the complaint pursuant to the provisions of Rule 39.2 of the Rules of Civil Procedure of

1958.[1] The trial court granted the motion and rendered a judgment which copied verbatim reads as follows:

"Carlos Hugo Irizarry is the owner of a dairy in the ward Candelaria of Toa Baja, and on October 17, 1958, eight cows which were in his stable died.

"The Water Resources Authority furnished the electric energy to plaintiff's stable and residence.

"It is alleged that the cause of the death of those eight cows was a defective installation in the electric service due to the fault and negligence of the defendant.

"Defendant's evidence has not established:

"(1) The cause of the death.

"(2) Defendant's negligence or fault.

"The plaintiff has the burden of proof of his allegations. The evidence as to the cause of the death is a belief or inference of a witness without he being able to explain it. That is to say, he believes that the cows died by electrocution, but he cannot explain how the current reached the cows to cause their death.

"On the other hand, even accepting that the cows died electrocuted, there is no evidence of defendant's negligence. The electric installation belongs to plaintiff and he is responsible for its care and maintenance. The ground wire was missing in plaintiff's safety switch, within the building, but the lack of that wire by itself did not make the current pass from the installation, through pipes to the hames which the cows had.

"Plaintiff's evidence does not permit us to conclude that the cows died electrocuted, nor that there was fault or negligence on the part of the defendant upon furnishing the electric service to plaintiff. If the safety switch was defective, it was plaintiff who was responsible for maintaining it in good conditions. But even on this point the evidence is contradictory. The electrician

---

[1] In its pertinent part Rule 39.2 reads as follows:

". . . After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 43.1. . . ."

found it in good conditions for use, and the only thing he did was to install the ground wire.

"The motion for nonsuit is hereby granted and the complaint is dismissed with costs to plaintiff."

We decided to review this judgment.

In this petition for review the errors assigned seek to attack the finding of the trial court of defendant's lack of liability. In the original complaint it was alleged that the electrocution of the animals was due to a defective installation in the electric service and to a defect in the meter installed by the defendant; after the evidence was heard, the plaintiff relied on the fact that the Water Resources Authority failed to fulfill its duty and was guilty of negligence in approving a defective installation and in furnishing electricity to the stable with a defective installation. It is undoubtedly due to the fact that it was established that the accident occurred in a place where the plaintiff was responsible for the existing installation. Likewise, plaintiff objects to the reasoning of the trial court in deciding the motion to dismiss, and insists that, in conformance with the traditional rule of the scintilla of evidence, there was sufficient ground in the record to establish a prima facie case and to require the defendant to present its evidence.

■ 1. Under the former Rule 41(b) of the Rules of Civil Procedure of 1943, identical with the original Federal Rule 41(b), the rule to challenge the sufficiency of the evidence at the conclusion of plaintiff's evidence is set forth in *Mariani* v. *Christy*, 73 P.R.R. 729, 741 (1952), in the following words: "A motion for nonsuit admits all the evidence introduced by the plaintiff in the light most favorable to the latter and must be denied if there is a mere scintilla of evidence in support of a cause of action and when said evidence makes a prima facie case. . . ." See, also, *Castro* v. *Payco, Inc.*, 75 P.R.R. 59 (1953); *José Malgor & Co.* v. *B. Silva, Sucrs.*, 70 P.R.R. 767 (1950); *Pagán* v. *Santiago,*

69 P.R.R. 136 (1948). But, Rule 39.2 of 1958, above-copied in its pertinent part, corresponding to Federal Rule 41(b) in force, as amended in 1946, introduced an important change in this respect, for it expressly authorizes the court to "determine the facts" and render judgment against the plaintiff, if proper. The federal courts have interpreted that the scope of this provision is to authorize the judge, at this stage of the proceedings, to evaluate the evidence presented by the plaintiff and to weigh the facts according to the credibility he may have given to the evidence introduced. See, *United States* v. *General Dynamics Corporation*, 246 F.Supp. 156, 159 (1965);[2] *O'Brien* v. *Westinghouse Electric Corporation*, 293 F.2d 1, 9 (3d Cir. 1961); 2B Barron & Holtzoff, Federal Practice and Procedure § 919 at 146–153; 5 Moore, Federal Practice § 41.13[4] at 1155 *et seq.* (2d ed.); 9 Fed. Rules Serv. 986–992; Annotations, 42 Ill. L. Rev. 228 (1947); 45 Mich. L. Rev. 788 (1947). See, *contra*, Steffen, *The Prima Facie Case in Non-Jury Trials*, 27 U. Chi. L. Rev. 94 (1959). Moore, *op. cit.*, explains that the amendment of 1946 to the Federal Rule 41(b) contemplated the purpose of settling the conflict which arose among the different appellate courts concerning the scope of the powers of the judge

---

[2] In *United States* v. *General Dynamics Corporation, supra* at 159, the rule is set forth in the following words:

"The motion made by the defendant in accordance with Rule 41(b) is the procedural equivalent of a motion for a directed verdict in a jury case. [Citations.] Though designed to accomplish the same result, the standards for decision are significantly different. In a jury action, on a motion for a directed verdict, the court should consider the evidence in a light most favorable to the plaintiff and accord all favorable inferences. The motion may be granted only if the evidence is insufficient to establish relief for the plaintiff, as a matter of law. [Citation.] In an action tried to the court sitting without a jury, the court weighs the evidence and considers the law. But in this context, the motion may be granted even though the plaintiff has made out a prima facie case. [Citation.] The court must view the evidence with an unbiased eye. . . . The evidence must be sifted and balanced and given such weight as the court deems fit. [Citation.]"

in considering a motion for nonsuit. He indicates that the function of the judge as trier of the facts is different from that of the jury in a jury case, and therefore, he may pass upon conflicting evidence and questions of credibility, and if he weighs the evidence and sustains the motion, it is appropriate to make findings of fact and conclusions of law.

■ The speedy determination of every case being one of the essential purposes of the rules of procedure, and considering the congestion of cases in the civil docket of the trial courts, we adopt the federal interpretation. Little would be gained by requiring invariably the presentation of defendant's evidence when the judge is convinced that plaintiff cannot prevail. It is fitting to point out that this power should be exercised after a serene and careful sifting of the evidence, and that in case of doubt, it is better to require the defendant to present his case.

■ Returning to the facts of the case at bar, it is inferred from the judgment that the trial court, in weighing plaintiff's evidence, believed that an explanation of the manner in which the electric current was transmitted to the hames to which the cows were tied had not been presented. This may be explained in view of the fact that the theory of the expert on the existence of "some point of connection" between the electric installation and the water and air pipes is derived from an inference on which the record is barren of proof. On the other hand, the absence of a determination to that effect, seeks to indicate that that part of his testimony on the lack of a ground wire in the meter did not merit any credit. And even if that would have been the case, as it is pointed out as to the safety switch or current-breaker, the lack of said wire did not mean that the current was transmitted from the installation to the hames, through the pipes. Summing up, the plaintiff failed to establish the causal connection which would give rise to respondent's liability.

2. Now then, even though the rule that the mere existence of a scintilla of evidence bars the dismissal would prevail, plaintiff-petitioner would still be unsuccessful. Weighed in the light most favorable to the latter, and as stressed in his petition and brief presented, the only act of alleged negligence on the part of the defendant would be its approval in 1950 of the electric installation made by plaintiff which was defective because it lacked a ground wire. Even thus, the element of causality indispensable for the imposition of liability would be missing. It is of strict application what was stated in footnote 6 of the opinion delivered in *Rodríguez v. Aponte*, 78 P.R.R. 719, 729 (1955), where considering a similar situation, it was said:

"No negligence can be presumed as the cause of the death, on the part of the Authority, by reason of the fact that it approved the installation as it did, among other reasons, because since it was shown that when the Authority started furnishing electric power the installation was in a condition to receive it, without it being proved that at any time before the accident the Authority had any knowledge of any defect in the installation, which would make it unsafe to continue furnishing the power, there is no basis for such a presumption."

In the instant case the installation was made in 1950 and the accident occurred eight years later. The installation was sufficient to receive the current during that long period of time and the evidence does not show that at any time was the Authority notified of any defect creating a dangerous situation. What it does show is that the installation was loaded by plaintiff with additional electric appliances, to which, likewise, the necessary ground wire was not furnished.[3]

---

[3] The corresponding Rules and Regulations provide:

22 R.&R.P.R. § 196–12(2)—". . . The cost of the line connecting the customer's plant to said protective equipment shall be paid by the customers, *and all such facilities shall be maintained by him.*" (Italics ours.)

22 R.&R.P.R. § 196–16(b)—"All lines and equipment of the customer must conform to accepted modern practice, as exemplified by the

The judgment rendered by the Superior Court, San Juan Part, on April 24, 1962 will be affirmed.[4]

---

requirement of the National Electrical Safety Code, and the National Electrical Code, and to such Commonwealth and local regulations as may apply."

22 R.&R.P.R. § 196-17—"The Authority shall have the right, but shall not be obligated, to inspect electrical installations at any time, and it reserves the right to reject any wiring or equipment not in accordance with its standards. Such inspection, *or failure to inspect, or to reject, shall not render the Authority, its agents,* or employees, *liable or responsible* for any loss, damage, or accident resulting *from defects in the customer's installation* of any electrical equipment, or for any violation of the 'application' or contract of which this subdivision is a part." (Italics ours.)

22 R.&R.P.R. § 196-23—"The customer shall be responsible for the care and use of the electric power from and after the point of delivery, and he shall not use such electric power for any other purpose nor in any other place, except as specified in the applicable rate schedule."

[4] In view of the result we have reached, it is unnecessary to make any determination on the motion to dismiss filed by appellee.